UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TARYN N. LOZINGUEZ )<br>    Plaintiff )<br>)<br>v. )<br>)<br>3 GEN LLC D/B/A PRESTIGE )<br>VOLKSWAGEN OF STAMFORD )<br>    Defendant )<br>) | CIVIL ACTION NO.<br><br><br>TRIAL BY JURY DEMANDED<br><br><br>DECEMBER 15, 2017 |

## **COMPLAINT**

### I. INTRODUCTION

1. This is a suit brought under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.* and Article 2 of the Uniform Commercial Code ("UCC"), Conn. Gen. Stat. §§ 42a-2-101 *et seq.*, against 3 Gen, LLC d/b/a Prestige Volkswagen of Stamford ("Prestige"), a car dealership that fraudulently and maliciously sold Plaintiff a 2015 Volkswagen GTI (the "Vehicle") as a "Certified Pre-Owned" ("CPO") vehicle, even though the Vehicle had substantial modifications resulting in a condition that rendered the Vehicle ineligible for inclusion in Volkswagen's CPO program. The Plaintiff also asserts pendent state law claims for violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.*

## II.  PARTIES

1. Plaintiff, Taryn N. Lozinguez ("Lozinguez"), is a natural person residing in Pompton Lakes, New Jersey and she is a "consumer" as that term is defined in §2301(3) of MMWA.

2. Prestige is a Connecticut corporation that operates a motor vehicle dealership in Stamford, Connecticut.  It is an authorized dealership for Volkswagen and is a warrantor as that term is defined in §2301(5) of MMWA.

## III.  JURISDICTION

3. Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 2310(d)(1)(B) and 15 U.S.C. § 1332.  Specifically, the total sale price for the Vehicle, as alleged below, is $27,571.19.  When this amount is combined with Plaintiff's contract claim for common law punitive damages, which are based upon the attorney's fees incurred by her and which are expected to exceed $50,000, then the total amount in controversy exceeds $75,000.  Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

4. This Court has jurisdiction over Prestige because it is incorporated and located in Connecticut and regularly does business in Connecticut.

5. Venue in this Court is proper, because the Defendant is incorporated in this state and the transaction alleged herein occurred in this state.

## IV. FACTUAL ALLEGATIONS

6. Volkswagen of America, Inc. ("Volkswagen") and its dealerships, including Prestige, promote Volkswagen's Certified Pre-Owned program ("CPO") as a means of marketing pre-owned vehicles.

7. Vehicles included in the CPO program are represented by Volkswagen and the participating dealership as having been subjected to a "meticulous" 100+-point inspection to ensure that they meet the program's stringent certification criteria.

8. Plaintiff was interested in purchasing a vehicle, and on or about May 18, 2016, Plaintiff visited Prestige and she met with Franklin Charmevil ("Franklin"), a salesperson.

9. Plaintiff told Franklin that she needed a reliable vehicle that was low cost to maintain because she drives approximately 25,000 miles per year.

10. Franklin showed Plaintiff a Certified Pre-Owned 2015 Volkswagen GTI (the "Vehicle").

11. During Plaintiff's test drive of the Vehicle, Franklin told Plaintiff that he was required to disclose that the Vehicle had two modifications: it had a "short shifter" and had been lowered.

12. Plaintiff asked Franklin if those modifications would affect the warranty, and he assured her there would be no impact with respect to the warranty.

13. Plaintiff also met with Eric Goldstein ("Eric") of Prestige, and she inquired about the recommended maintenance for the Vehicle.

14. Eric told Plaintiff that the oil changes and recommended maintenance services would be covered under the warranty.

15. Based on Prestige's representations that the modifications to the Vehicle did not impact warranty coverage, and believing that the Vehicle complied with VW's CPO criteria and that there were no other, undisclosed modifications, Plaintiff agreed to purchase the Vehicle at a cash price of $21,900.

16. Prestige prepared a Purchase Order that included a service contract for $2,320.00.

17. Prestige prepared a Retail Installment Contract (the "Contract") that listed a cash price of $23,665.19, including sales tax of $1,765.19.

18. Plaintiff financed the balance of $27,571.19 pursuant to the Contract that was assigned by Prestige to VW Credit, Inc.

19. Prestige provided Plaintiff with a "Certified Inspection and Condition Report" which indicated that all areas inspected under the Volkswagen CPO met the CPO standards including no cracks or chips in the windshield.

20. Unbeknownst to Plaintiff, the Vehicle's modifications, as disclosed by Prestige, made the Vehicle ineligible for inclusion under Volkswagen's CPO program.

21. Additionally, unbeknownst to Plaintiff at the time of purchase, the Vehicle had additional modifications that were not disclosed by Prestige that also made the Vehicle ineligible for inclusion under Volkswagen's CPO program.

22. Additionally, the modifications to the Vehicle made the Vehicle ineligible for coverage under the service contract that Prestige sold to Plaintiff.

23. Plaintiff took delivery of the Vehicle on or about March 18, 2016.

24. While driving the Vehicle home from Prestige on March 18, 2016, Plaintiff noticed the windshield had a chip in it, and she called Franklin at Prestige.

25. On April 6, 2016, Plaintiff returned the Vehicle to Prestige to have the windshield replaced.

26. On or about August 22, 2016, Plaintiff brought the Vehicle to her local Volkswagen dealership, Douglas Volkswagen in New Jersey, for an oil change.

Douglas informed Plaintiff that oil changes and recommended maintenance were not covered under any warranty.

27. Plaintiff also experienced problems with the Vehicle's shifter, and she called Prestige and spoke with Edward Schoomaker, the general sales manager. Plaintiff told Schoomaker that Douglas Volkswagen had told her oil changes and maintenance were not covered under any warranty. She also told Schoomaker that the Vehicle would often grind and jump when put in reverse and that it would jump out of gear when in first gear.

28. In or about December, 2016, Plaintiff noticed that the Vehicle's tires were wearing, resulting in the need to prematurely replace the tires at a cost of approximately $600.

29. On or about December 9, 2016, Plaintiff contacted the Volkswagen customer care line and filed a complaint.

30. On or about December 28, 2016, Volkswagen informed Plaintiff that Prestige had claimed that the Vehicle had been restored to its original condition by Prestige and that any modifications to the Vehicle had been made by Plaintiff.

31. On or about February 17, 2017, Plaintiff brought the Vehicle back to Douglas Volkswagen for a 40,000 mile service, and Douglas Volkswagen informed Plaintiff that the Vehicle had an aftermarket APR filter.  Douglas Volkswagen also told Plaintiff that the shifter was jumping out of gear because it was not properly aligned.

32. On or about July 11, 2017, Plaintiff brought the Vehicle to West Side Tire & Auto, who informed Plaintiff that the Vehicle had the following modifications: high performance racing springs, high performance steering stabilizer bars front and rear,

5

modified turbo charger, transmission shifter upgrade to a short throw shifter and a high performance cold air system.  Plaintiff paid West Side $107.41 for this inspection.

33. On or about October 16, 2017, Plaintiff brought the Vehicle to an independent expert to obtain an assessment of the value of the Vehicle.

34. The independent expert determined that the Vehicle had a diminished value of $7,118.75 at the time of sale due to the modifications.  The cost of that inspection was $795.

35. None of the modifications made to the Vehicle were done subsequent to the delivery of the Vehicle to Plaintiff.

36. As a consequence of the modifications made to the Vehicle, the Vehicle was not eligible for certification under Volkswagen's CPO program at the time of sale to Plaintiff.

37. As a consequence of the modifications, the Vehicle had a value of approximately $7,118.75 less than the value of a comparable vehicle that was not modified and satisfied the criteria for Volkswagen's CPO program.

38. A cursory inspection by anyone experienced in the automotive trade would have revealed the modifications.

39. Plaintiff had accepted delivery of the Vehicle unaware of the extent of the Vehicle's modifications, and unaware that the modifications would void the service contract and disqualify the Vehicle for inclusion in Volkswagen's CPO program.

## V.  CAUSES OF ACTION

### A.  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

40. The Vehicle is a consumer product as that term is defined in § 2301(1) of the MMWA (15 U.S.C. §§ 2301-2312).

41. Prestige breached the implied warranty of merchantability, Conn. Gen. Stat. § 42a-2-314, in that the Vehicle would not pass in trade without objection under the description in which it was sold, as a Certified Pre-Owned 2015 Volkswagen GTI.

42. Prestige knew, or reasonably should have known, based on its expertise in the sale and certification of used Volkswagen vehicles, that the Vehicle did not meet the standards for "Certified Pre-Owned" status due its modifications.

43. It is not possible for Prestige to cure the breach of implied warranty of merchantability, or Plaintiff provided Prestige with a reasonable opportunity to cure the breach of implied warranty but it has not done so, or both.

44. Prestige's breaches of the implied warranty of merchantability were tortious in nature, in bad faith, were wanton and malicious, outrageous, and were undertaken with bad motive and with a reckless indifference to Plaintiff's interests and the injury that she sustained.

45. Specifically, Prestige falsely represented that it had conducted a Volkswagen CPO inspection of the Vehicle and falsely represented that the Vehicle had passed the CPO inspection and falsely certified that the Vehicle met the criteria for certification.

46. Prestige's breach of the implied warranty of merchantability has caused Plaintiff to incur damages, including common law punitive damages, which are expected to exceed $75,000.

47. Prestige is also liable for attorney's fees pursuant to Magnuson-Moss.

### B.  BREACH OF EXPRESS WARRANTY

48. Prestige made affirmations of fact or promise relating to the Vehicle that became part of the basis of the bargain and that created express warranties pursuant to Conn. Gen. Stat. § 42a-2-313(a).

49. Specifically, Prestige represented that the Vehicle had undergone the necessary inspections and met the requisite criteria to be designated as a "Volkswagen Certified Pre-Owned" vehicle.

50. Prestige's representations that the Vehicle was a CPO vehicle constituted a description of the Vehicle that was part of the basis of the bargain, i.e., that the Vehicle satisfied the rigorous requirements for certification under Volkswagen's CPO program and that it met the requirements to be designated as a Volkswagen CPO vehicle, and this description became part of the basis of the bargain.

51. The Vehicle did not meet the criteria for certification under Volkswagen's CPO program.

52. Prestige's breaches of express warranties were tortious in nature, in bad faith, were wanton and malicious, outrageous, and were undertaken with bad motive and with a reckless indifference to the Plaintiff's interests and the injury that she sustained.

53. As a result of the above-described actions, Prestige is liable to Plaintiff for her damages, including common law punitive damages.

### C. CONNECTICUT UNFAIR TRADE PRACTICES ACT

54. Through its above-described actions, Prestige violated CUTPA by making false statements regarding the extent of modifications to the Vehicle, and by making false statements that the modifications would not affect the Vehicle's eligibility for inclusion under Volkswagen's CPO Program or the Vehicle's eligibility for coverage under the extended warranty that it sold to Plaintiff.

55. Prestige has violated CUTPA by acting deceptively or unfairly or both, in the following ways:

   a. It made false statements that it had inspected this Vehicle and that it had passed the 100+ point inspection required by Volkswagen's CPO Program;

   b. Its promotion of Volkswagen's CPO program when it does not regularly conduct the 100+ point inspection as described therein;

   c. It sold the Vehicle to Plaintiff even though the Vehicle's modifications rendered the Vehicle ineligible for inclusion in Volkswagen's CPO Program;

   d. It made false statements that the Vehicle's modifications would not impact the warranty under Volkswagen's CPO Program; and

   e. It sold Plaintiff a service contract that had no value because the Vehicle's existing modifications excluded it from coverage under the service contract.

56. As a result of Prestige's conduct, the Plaintiff has suffered an ascertainable loss of money and property, including, but not limited to, the purchase of a

Vehicle that was worth substantially less than the amount that it would be worth if the representations had been true.

57. For Prestige's violations of CUTPA, the Plaintiff is entitled to damages, attorney's fees and costs, and, in the discretion of the court, punitive damages.

WHEREFORE, Plaintiff claims actual damages, punitive damages, costs, reasonable attorney's fees, and such other relief to which the Plaintiff is, at law, or in equity and by statute, entitled to against defendants.

                              PLAINTIFF, TARYN N. LOZINGUEZ

                        By: /s/ *Daniel S. Blinn*
                              Daniel S. Blinn (ct02188)
                              dblinn@consumerlawgroup.com
                              Consumer Law Group, LLC
                              35 Cold Spring Rd. Suite 512
                              Rocky Hill, CT  06067
                              Tel.  (860) 571-0408
                              Fax. (860) 571-7457